CT Corporation

**Service of Process Transmittal**
12/02/2015
CT Log Number 528252449

TO:     Janet Kuhn
        Werres Corporation
        807 E South St
        Frederick, MD 21701-5737

RE:     **Process Served in Virginia**

FOR:    Werres Corporation  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | JOMAN SAYEGH, Administrator of the Estate of George Demian, Pltf. vs. THE RAYMOND CORPORATION, et al., Dfts. // To: Werres Corporation |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, First Interrogatories |
| **COURT/AGENCY:** | Roanoke City Circuit Court, VA<br>Case # 770CL1500174900 |
| **NATURE OF ACTION:** | Product Liability Litigation - Manufacturing Defect - Wrongful Death - On or about December 28,. 2014 |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Glen Allen, VA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 12/02/2015 at 09:45 |
| **JURISDICTION SERVED :** | Virginia |
| **APPEARANCE OR ANSWER DUE:** | Within 21 days after such service |
| **ATTORNEY(S) / SENDER(S):** | D ADAM MCKELVEY<br>CRANDALL & KATT<br>366 Elm Avenue, S.W.<br>Roanoke, VA 24016<br>540-342-2000 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  Fed Ex 2 Day , 781844014824 |
| **SIGNED:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | C T Corporation System<br>4701 Cox Road<br>Suite 285<br>Glen Allen, VA 23060<br>804-217-7255 |

Page 1 of  1 / AV

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

**EXHIBIT A**

# COMMONWEALTH OF VIRGINIA



### ROANOKE CITY CIRCUIT COURT
Civil Division
315 CHURCH AVENUE, SW
ROANOKE VA 24016
(540) 853-6702

Summons

To: WERRES CORPORATION                                   Case No. 770CL15001749-00
    CT CORPORATION SYSTEM
    REGISTERED AGENT
    4701 COX ROAD
    SUITE 285
    GLEN ALLEN VA 23060

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence..

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Thursday, October 08, 2015

Clerk of Court: BRENDA S. HAMILTON

        by _____
                        (CLERK/DEPUTY CLERK)

Instructions:   ATTACHED COMPLAINT AND FIRST SET OF INTERROGATORIES

Hearing Official:

Attorney's name:   MCKELVEY, D ADAM
                   540-342-2000

VIRGINIA:   IN THE ROANOKE CITY CIRCUIT COURT

| | |
|---|---|
| JOMAN SAYEGH, Administrator<br>    of the Estate of George Demian,<br><br>    Plaintiff,<br><br>v.<br><br>THE RAYMOND CORPORATION,<br><br>WERRES CORPORATION,<br><br>PAUL WILLAERT,<br><br>&<br><br>JOHN DOE,<br><br>    Defendants. | Case No. *CU5-1749* |

## COMPLAINT

COMES NOW your plaintiff, JOMAN SAYEGH, Administrator of the Estate of George Demian, plaintiff ("plaintiff"), by counsel, and moves this Court for judgment against THE RAYMOND CORPORATION ("Raymond"), WERRES CORPORATION ("Werres"), PAUL WILLAERT ("Willaert"), and JOHN DOE ("Doe") defendants, (collectively "defendants"), jointly and severally, on the grounds and in the amounts as hereinafter set forth:

## COMMON FACTS

1.　　The plaintiff, Joman Sayegh, qualified as the Administrator of the Estate of George Demian in the Roanoke City Circuit Court.

2.　　The plaintiff is and was at all relevant times a citizen and resident of the Commonwealth of Virginia.

3.　　George Demian, ("decedent") the plaintiff's decedent was at all relevant times a citizen and resident of the Commonwealth of Virginia.

4.     At all relevant times, Raymond was and is a corporation organized and existing under the laws of the State of New York, with its principal place of business in New York. At all relevant times, Raymond had minimum contacts with Virginia due to the fact that it places its products into the stream of commerce for consumption in Virginia.

5.     At all relevant times, Werres was and is a corporation organized and existing under the laws of the State of Delaware, with its principal office in Maryland. At all relevant times, Werres operated a business location Virginia.

6.     At all relevant times, Willaert and Doe were and are employees of Werres, and were both residents and citizens of the Commonwealth of Virginia.

7.     On or about December 28, 2014, the decedent was operating a machine generically referred to as a forklift ("subject forklift") with reasonable care at the Elizabeth Arden plant located in the Blue Hills business center in the City of Roanoke, Virginia ("subject location").

8.     At the time and place aforesaid, the scene photographs taken by police after the subject incident establish that while the decedent was operating the subject forklift at the subject location, the forklift backed under a horizontal beam that was present to support storage shelving at the subject location, in the portion which functioned as a warehouse. As an actual and proximate result of this impact, the decedent was pinned between the horizontal beam and the forklift, and sustained physical injury actually and proximately causing the decedent's death as established by the medical examiner.

9.     The subject forklift was designed, manufactured, packaged, and labeled by Raymond, as shown from the labeling of the subject forklift, which has "Raymond" written on it.

10.    The subject forklift was sold to the operators of the Elizabeth Arden facility, and subsequently maintained by Werres, through its employees Willaert and/or Doe, who were at all relevant times acting within the scope and course of their employment by, and for the business benefit of Werres, such that they were paid a wage to perform the services under the direction and control of Werres, as alleged herein.

11.    The decedent provided monetary support for his wife and young children prior to his death.

12.    As an actual and proximate result of the subject incidents occurrence, and the death of the decedent, his administrator, estate and/or statutory beneficiaries were caused to suffer sorrow, grief, mental anguish and suffering, and the loss of solace, including society, companionship, comfort, guidance, kindly offices, and advice of the decedent, loss of income and services, protection, care and assistance of the decedent, and expenses for the care, treatment, hospitalization and funeral services of the decedent, incident to the injuries and death.

13.    Neither the decedent, the plaintiff, nor any of the beneficiaries were contributorily negligent, assumed the risk of injury, fail to mitigate their damages, nor did they misuse the subject forklift.

14.    The plaintiff provided notice to the defendants of their breach of warranties, as alleged herein, by letter, shortly after the subject incident.

15.    The decedent at all times used the forklift in a way that was reasonably foreseeable to the defendants, as established by the fact that horizontal bars were optional equipment that was sold in Raymond's catalogue, through Werres and its employees.

## THE DEFECT

15.     The subject forklift was designed and manufactured such that it did not have vertical rear posts.

16.     The subject forklift was labeled such that it did not have a warning concerning the hazard of an occupant being trapped between the forklift and a horizontal rack beam.  Said hazard is commonly called an under-ride injury.

17.     The subject forklift was at all relevant times unreasonably dangerous due to the fact that it did not have vertical rear posts that would protect the operator, including the decedent, from under-ride injuries.

18.     The defendants knew, or in the exercise of ordinary care, should have known, that the subject forklift was unreasonably dangerous, due to the fact that the abovementioned catalogue mentioned the potential use of a vertical beams on the forklift to prevent under-ride injuries, said knowledge has been known in the industry, and there has been a patented design for its use, since the 1960s, and officers of defendant Raymond have served on standards committee(s) that have discussed this specific hazard relative to standards promulgation deliberations.

19.     The absence of the vertical posts on the subject forklift actually and proximately caused the decedent's death due to the fact that said vertical posts would have prevented the under-ride injury by blocking the horizontal beams protrusion into the operator compartment where the decedent was located.

## COUNT ONE—BREACH OF WARRANTY AND FAILURE TO WARN

20.     The prior paragraphs are incorporated by reference into this count.

21.     The defendants at all times material hereto, by and through the sale of the subject

forklift, expressly and impliedly warranted to users through their actions, representations, promises, affirmations, promotions, product literature, photographs and promotional material, to all prospective consumers and the public generally, including the decedent, that the subject forklift which the defendants (individually or in combination) designed, manufactured, assembled, rebuilt, modernized, sold, serviced, marketed and/or distributed was of such quality and reasonably fit for the purpose of serving as a forklift, and knew that it was foreseeable that the subject forklift would be used as a forklift.

22.     The defendants at all times material hereto, knew, or in the exercise of ordinary care should have known, that the decedent would use the subject forklift as a forklift, and that the operators of the subject location were relying upon their skill and judgment in the selection of the subject forklift.

23.     The operators of the Elizabeth Arden facility and the decedent made use of the subject forklift as alleged herein, and relied on the express and implied warranties made by the defendants through their actions, representations, promises, affirmations, promotions, product literature, photographs, selection of the subject forklift after being present at the Elizabeth Arden facility and promotional material (either individually or in combination) that the subject forklift was fit for the purpose of serving as a forklift.

24.     The defendants breached their express and implied warranties of fitness and merchantability by defectively designing, manufacturing, assembling, building, modernizing, selling, servicing, marketing and/or distributing the subject forklift which was unreasonably dangerous for the use to which it was intended as reflected throughout the defendants' actions, representations, promises, affirmations, promotions, product literature, photographs and promotional material.

25.     The defendants further breached their express and implied warranties of fitness and merchantability by failing to warn and/or instruct users, purchasers, the public, and others, including the decedent, concerning the dangerous characteristics of the forklift when used in a reasonably foreseeable manner.

26.     The defendants' breach of warranties (either individually or in combination) as described herein directly and proximately caused the decedent's death and the decedent's injuries and damages as alleged herein.

## COUNT TWO—NEGLIGENT DESIGN, MANUFACTURE, ASSEMBLY, AND FAILURE TO WARN

27.     The preceding paragraphs are incorporated into this count.

28.     The defendants owed to decedent a duty to use reasonable care in manufacturing, re-manufacturing, modifying and/or altering, fabricating, designing, packaging, shipping, selling, servicing, assembly and/or distributing the subject forklift, and to use reasonable care to design a product that is reasonably safe for its intended purpose.

29.     The defendants (either individually or in combination) breached these duties and were negligent in the following acts or omissions:

    a.    the defendants negligently manufactured, re-manufactured, modified and/or altered, fabricated, designed, packaged, shipped, sold, assembled, serviced and/or distributed the subject forklift in such condition that it failed to perform in the manner for which it was intended;

    b.    the defendants negligently manufactured, re-manufactured, modified and/or altered, fabricated, designed, packaged, shipped, sold, serviced, assembled and/or distributed the subject forklift in a manner such that it could not be operated safely;

    c.    the defendants negligently caused to place into the stream of commerce subject forklift in a manner so eminently dangerous and inherently defective that users of the subject forklift could not appreciate the dangers associated with its use;

d.   the defendants failed to make reasonable inspections and tests, and failed to instruct, warn and/or follow reasonable quality control procedures to discover the defects, dangers, and hazards presented by the subject forklift which the defendants manufactured, re-manufactured, modified, and/or altered, fabricated, designed, packaged, shipped, sold, serviced and/or distributed; and

e.   the defendants failed to use reasonable care to warn consumers, including the decedent, that the subject forklift was unsafe as alleged herein, when they had reason to know that the subject forklift was dangerous for its intended use, as a forklift and knew or should have known that consumers, including the decedent, would not realize it's dangerous condition.

30.   The defendants' breach of these duties (either individually or in combination) as described herein, directly and proximately caused the decedent's death and the plaintiff's and beneficiaries damages, as alleged herein.

31.   The decedent did not use the product in an unsafe manner, was not contributorily negligent, did not discover the defect, did not assume the risk of injury, and did not fail to mitigate his damages.

## COUNT THREE—WILFUL AND WANTON CONDUCT

32.   The defendants' conduct in failing to design, manufacture, and subsequently selling the subject forklift, without vertical bars to protect the operator, constituted willful and wanton conduct and a conscious disregard for the rights and safety of others due to the fact that the defendants have actually known since the 1960s that under-ride hazards exist, the defendants have actually known of technology present to mitigate under-ride hazards since the 1960s, the defendants have no reason not to cause this equipment to be mandatory and to recall their prior models other than economic loss to their company, the defendants have systematically and deliberately chosen, to sell the vertical guards as optional equipment to boost profits, the defendants are aware of OSHA and other workplace regulations that indicate that under-ride

hazards are a national problem, defendant Raymond has deliberately and systematically voted against the mandatory inclusion of the vertical guards in the standards committee which determines MINIMUM forklift requirements in the United States solely for their economic benefit as alleged herein, and the defendants have no valid scientific basis to no include vertical guards as mandatory equipment.

33.   The corporate defendants have ratified the conduct of their individual employees in their conduct as alleged herein.

WHEREFORE, plaintiff prays for judgment against the defendants, jointly and severally, in the sum of ten million dollars in compensatory damages, pre- and post-judgment interest, and costs expended and three hundred fifty thousand dollars each, in punitive damages.

A TRIAL BY JURY IS REQUESTED.

Respectfully submitted,
JOMAN SAYEGH, etc.

By: _____
of Counsel

D. Adam McKelvey, Esquire (Va. State Bar No. 75174)
**CRANDALL & KATT**
**Attorneys and Counselors at Law**
366 Elm Avenue, S.W.
Roanoke, Virginia 24016
Telephone:    (540) 342-2000
Facsimile:    (540) 345-3527
dmckelvey@crandalllaw.com

*Counsel for plaintiff*