IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JOMAN SAYEGH, Administrator of the Estate of George Demian, | )<br>)<br>) |
| Plaintiff, | ) Civil Action No. 7:15CV00688<br>)<br>) **MEMORANDUM OPINION** |
| v. | )<br>) By: Hon. Glen E. Conrad |
| THE RAYMOND CORPORATION, et al., | ) Chief United States District Judge<br>) |
| Defendants. | ) |

This case is presently before the court on the plaintiff's motion to remand. For the reasons that follow, the motion will be denied.

### Background

On December 28, 2014, George Demian, a resident of Roanoke, Virginia, sustained fatal injuries while operating a lift truck at the Elizabeth Arden, Inc. ("Elizabeth Arden") plant in Roanoke. Demian backed the lift truck under a horizontal beam inside the plant, and he became pinned between the beam and the lift truck, which ultimately resulted in his death.

On October 8, 2015, Joman Sayegh, the administrator of Demian's estate, filed this action in the Circuit Court for the City of Roanoke, alleging that the lift truck was "unreasonably dangerous due to the fact that it did not have vertical rear posts that would protect the operator . . . from under-ride injuries." Compl. ¶ 17. The plaintiff named as defendants The Raymond Corporation ("Raymond"), the manufacturer of the lift truck; Werres Corporation ("Werres"), the entity through which Elizabeth Arden leased and later purchased the lift truck; and Paul Willaert ("Willaert"), a salesman employed by Werres. She asserted claims for breach of warranty (Count One); negligent design, manufacture, assembly, and failure to warn (Count Two); and willful and wanton conduct (Count Three).

On December 23, 2015, Werres removed the case to this court on the basis of diversity jurisdiction. In the notice of removal, Werres acknowledged that Willaert is a resident of Virginia. Werres argued, however, that Willaert had been fraudulently joined as a defendant, and, thus, that his citizenship should be ignored for purposes of diversity jurisdiction. Raymond, who had not been served at the time the notice of removal was filed, joined in the removal on February 4, 2016.

On June 1, 2016, the plaintiff moved to remand the case to state court. She contends that Willaert was not fraudulently joined, and, thus, that his presence defeats diversity jurisdiction. The court held a hearing on the motion on July 29, 2016. The motion has been fully briefed and is ripe for disposition.

## **Standard of Review**

In order for an action to be removed from state court to federal court, the action must be one "of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). The burden of demonstrating jurisdiction rests with the party seeking removal. Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994). If at any time before final judgment it appears that the court lacks subject-matter jurisdiction, the court must remand the case. 28 U.S.C. § 1447(c); see also Brickwood Contractors, Inc. v. Datanet Eng'g, Inc., 369 F.3d 385, 390 (4th Cir. 2004) (observing that defects in subject-matter jurisdiction cannot be waived by the parties and may be addressed at any stage of the proceedings).

In this case, Werres premised its removal upon 28 U.S.C. § 1332, pursuant to which federal district courts have original jurisdiction over civil actions in which the amount in controversy exceeds $75,000 and the dispute is between citizens of different states. See 28 U.S.C. § 1332(a)(1). "Section 1332 requires complete diversity among the parties, meaning the citizenship of each plaintiff must be different from the citizenship of each defendant." Hoschar v. Appalachian Power Co., Inc., 739 F.3d 163, 170 (4th Cir. 2014). For purposes of this statute, "the legal representative

2

of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent." 28 U.S.C. § 1332(c)(2).

Although the plaintiff and Willaert are both citizens of Virginia, the defendants contend that Willaert's citizenship should be ignored under the fraudulent joinder doctrine. The fraudulent joinder doctrine provides an exception to the requirement of complete diversity. Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999). "This doctrine effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." Id. "To show fraudulent joinder, the removing party must demonstrate either 'outright fraud in the plaintiff's pleading of jurisdictional facts,' or that 'there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'" Hartley v. CSX Transp. Inc., 187 F.3d 422, 424 (4th Cir. 1999) (emphasis omitted) (quoting Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993)). In deciding whether the removing party has met this "heavy" burden, "the court is not bound by the allegations in the pleadings, but may instead 'consider the entire record, and determine the basis of joinder by any means available.'" Mayes, 198 F.3d at 464 (quoting AIDS Counseling and Testing Centers v. Group W Television, Inc., 903 F.2d 1000, 1004 (4th Cir. 1990)).

In this case, the defendants do not argue that "outright fraud" exists; instead, they contend that the plaintiff has "no possibility" of recovery against Willaert. The "no possibility" standard "is more properly applied not rigidly but reasonably." Linnin v. Michielsens, 372 F. Supp. 2d 811, 818 (E.D. Va. 2005) (citation and internal quotation marks omitted). Specifically, the removing party must show that "there is no reasonable basis for predicting liability on the claims alleged." Cordill v. Purdue Pharma., L.P., No. 1:02-CV-00121, 2002 U.S. Dist. LEXIS 21476, at *6 n.5 (W.D. Va. Nov. 5, 2002); see also Linnin, 372 F. Supp. at 819.

3

The defendants first contend that the plaintiff cannot maintain a breach of warranty claim against Willaert. Under Virginia law, which the parties agree controls the resolution of this action, "manufacturers and sellers of defective products" can be held liable for breach of the implied warranty of merchantability. Bly v. Otis Elevator Co., 713 F.2d 1040, 1042 (4th Cir. 1983); see also Va. Code § 8.2-314 ("Unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."). A "seller" can also be held liable for breach of the implied warranty of fitness for a particular purpose. See Va. Code § 8.2-315. For purposes of these provisions, "[a] 'seller' is 'a person who sells or contracts to sell goods,' Code § 8.2-103(1)(d)," and "'[a] sale consists in the passing of title from the seller for a price[,]' Code § 8.2-106(1)." Leake v. Meredith, 267 S.E.2d 93, 95 (Va. 1980)).

In this case, the plaintiff does not claim that title to the lift truck passed from Willaert to Elizabeth Arden. Instead, the plaintiff specifically alleges that the lift truck was sold to Elizabeth Arden through Werres, and that Willaert was merely an "employee[]" of the company. Compl. ¶ 10. As such, Willaert was not the "seller" or "manufacturer" of the lift truck, and, thus, the court agrees with the defendants that there is no reasonable basis for predicting liability against Willaert on the plaintiff's breach of warranty claims. See Linnin, 372 F. Supp. 2d at 823 (holding that there was no reasonable basis for predicting any possibility of liability against an employee on the plaintiff's breach of warranty claim, since the employee was "neither a manufacturer nor a seller" and "made no contract – oral, written, or implied – with the decedent").

The defendants also contend that there is no possibility of recovery against Willaert for "negligent design, manufacture, assembly, and failure to warn." Compl. at 8. The court agrees. In determining whether an employee can be held liable for an injury to a third party, Virginia courts distinguish between acts of misfeasance and nonfeasance. Specifically, "[a]n employee may be

4

liable for his own misfeasance (i.e., performance of an act done improperly), but not for his own nonfeasance (i.e., omission to do some act which ought to be performed)." Beaudoin v. Sites, 886 F. Supp. 1300, 1302-03 (E.D. Va. 1995) (emphasis omitted) (quoting Harris v. Morrison, Inc., 32 Va. Cir 298, 298-99 (1993)).

In this case, it is undisputed that Willaert did not design, manufacture, or assemble the lift truck that Semian was operating at the time of his death. To the extent the plaintiff alleges that Willaert failed to adequately warn of the risks associated with using the lift truck, such allegations describe acts of nonfeasance for which an employee is not personally liable under Virginia law. See Hall v. Walters, No. 3:13-CV-210, 2013 U.S. Dist. LEXIS 95858, at *11 (E.D. Va. July 9, 2013) ("Both state and federal courts have found that, under Virginia law, a plaintiff who alleges only an employee's failure to detect, remove, or warn of a danger has failed to state a claim of misfeasance for which the employee may be personally liable."); Saunders v. Boddie-Noell Enterprises, Inc., No. 7:08cv110, 2008 U.S. Dist. LEXIS 48715, at *5 (W.D. Va. June 25, 2008) ("Plaintiff's allegations, that defendant omitted to do acts which should have been performed, constitute acts of nonfeasance, and not misfeasance . . . . Accordingly, there is 'no possibility' that the two John Doe defendants would be held liable under Virginia law."). In the absence of any allegation or evidence that Willaert himself "affirmatively acted to create a dangerous condition in any way," the court concludes that there is no possibility that Willaert would be held liable for negligence. Cruz v. Krispy Kreme Doughnut Corp., No. 3:15CV258, 2015 U.S. Dist. LEXIS 139381, at *9 (E.D. Va. Oct. 13, 2015).

Finally, the defendants contend that there is no possibility that the plaintiff would be able to establish a claim for willful and wanton conduct against Willaert. "The tort of willful and wanton negligence has been characterized as 'a spirit of mischief, criminal indifference, or conscious disregard for the rights of others.'" Volpe v. City of Lexington, 708 S.E.2d 824, 829 (Va. 2011)

5

(quoting Infant C. v. Boy Scouts of Am., Inc., 391 S.E.2d 322, 327 (1990)). In Infant C., the Supreme Court of Virginia explained:

> The hallmark of this species of tortious conduct is the defendant's consciousness of his act, his awareness of the dangers or probable consequences, and his reckless decision to proceed notwithstanding that awareness. Because such consciousness and awareness are prerequisites, the use of the term "negligence," in defining the tort, is a misnomer.

Infant C., 391 S.E.2d at 327.

In the instant case, there is no allegation or evidence that Willaert acted with a spirit of mischief or criminal indifference. Nor is there any allegation or evidence that Willaert consciously disregarded the safety of others in facilitating the lease and sale of the subject lift truck. Consequently, the court agrees with the defendants that there is no possibility that the plaintiff would be able to establish a claim for willful and wanton conduct against Willaert.

## Conclusion

For the reasons stated, the court concludes that Willaert was fraudulently joined as a defendant. The court will disregard Willaert's citizenship for diversity purposes, dismiss him from the case, and retain jurisdiction over the plaintiff's claims against the remaining defendants. The plaintiff's motion to remand will be denied.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 1st day of November, 2016.

*/s/ Glen Conrad*
Chief United States District Judge